**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LATEFAH SHAMPINE, | ) | Case No. 1:07CV3886 |
| | ) | |
| Plaintiff, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | Magistrate Judge Greg White |
| | ) | |
| EAST CLEVELAND BOARD OF EDUCATION, | ) ) | |
| | ) | |
| Defendant. | ) | **REPORT & RECOMMENDATION** |

Plaintiff Latefah Shampine ("Plaintiff"), *pro se*, filed a Complaint against Defendant East Cleveland Board of Education ("Defendant").[1] Plaintiff has alleged claims of age discrimination, "cultural" discrimination, and a violation of her due process rights. (Doc. No. 1.) On December 19, 2008, Defendant filed a Motion for Summary Judgment. (Doc. No. 32.) Plaintiff has not filed a brief in opposition despite being given a thirty (30) day extension of time to do so. (Doc. No. 33.) This matter was referred to the undersigned Magistrate Judge for general pretrial supervision, including Report and Recommendations on any case dispositive motions. (Doc. No. 7.) For the reasons stated below, it is recommended that Defendant East Cleveland's Motion for Summary Judgment be GRANTED.

---

[1] After the pleadings had been filed, Edward A. Icove was appointed as *pro bono* counsel for Plaintiff. (Doc. No. 27.) After initial discovery, Mr. Icove's request that he be allowed to withdraw from representation was granted. (Doc. No. 33.)

## I. Procedural History

On June 13, 2007, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunities Commission ("EEOC") alleging that Defendant's employment decisions were discriminatory. (Doc. No. 32, Exh. 1.) Plaintiff alleged age and religious discrimination as well as retaliation. *Id.* Specifically, Plaintiff identified the discriminatory action as Defendant's decision to not hire her as a substitute teacher for the 2006-2007 school year or for the 21st Century Community Learning Center Project ("CLCP") summer program in 2007. *Id.* The EEOC dismissed Plaintiff's charge on September 20, 2007. (Doc. No. 32, Exh. 2.)

On December 27, 2007, Plaintiff instituted the present suit. The Complaint alleges three causes of action: Count One – "not hiring her because of her age, in violation of the Age Discrimination Act of 1967"; Count Two – "not hiring her because of her culture in violation of [the] Civil Rights Act of 1964"; and Count Three – a violation of her rights under the Fourteenth Amendment to the United States Constitution and Art. I, sec. 1 of the Ohio Constitution. (Doc. No. 1 at ¶¶4-6.)

## II. Factual Summary

Plaintiff worked as a substitute teacher in the East Cleveland school system for several years prior to the 2006-2007 school year. (Doc. No. 32, Affid. of Myrna Corley, Exh. 3 at ¶3.)[2] Defendant hires its substitute teachers prior to the beginning of each school year to teach on an "as-needed basis." *Id.* at ¶2. According to Ms. Corley, teachers must reapply

---

[2] Myrna Corley serves as Defendant East Cleveland's Superintendent of Schools. (Doc. No. 33, Exh. 3 at ¶1.)

each summer for a substitute-teaching position for the upcoming year. *Id*. Each applicant must hold a valid substitute-teaching license.[3] *Id*. During the summer of 2006 when applications for work in the 2006-2007 school-year were being reviewed, Defendant asserts that Plaintiff's license was not active. *Id*. at ¶4. According to the Employer Copy of Plaintiff's 5 Year Long Term Substitute License, she was licensed to teach "Multi Age (P-12) Visual Art" from July 1, 2006 until June 30, 2011. (Doc. 32, Exh. 4.) However, her license was not issued until November 29, 2006. (Doc. No. 32, Exhs. 1 & 4.) Ms. Corley states that Plaintiff was not hired due to her lack of an active license and further avers that no person without a valid teaching license was hired at that time. (Doc. No. 32, Exh. 3 at ¶5). Ms. Corley informed Plaintiff several times in October of 2006 that she did not possess a valid license. (Doc. No. 32, Exhs. 1 & 3 at ¶6.)

Ms. Corley learned from Plaintiff that she was in the process of applying for a long-term substitute-teacher certificate. (Doc. No. 32, Exh. 3 at ¶7.) Defendant verified this information with the Ohio Department of Education and learned that Plaintiff would be issued a license in late November of 2006. *Id*. Based on these representations, Plaintiff was then hired for a position with the 21st Century Afterschool Program for the remainder of the 2006-2007 school year. *Id*.

Defendant East Cleveland offers a summer program to its students through the federally funded CLCP program. (Doc. No. 32, Exh. 3 at ¶8.) Plaintiff had been employed at

---

[3] Pursuant to Ohio Revised Code ("O.R.C.") § 3319.30, "no person shall receive any compensation for the performance of duties as teacher in any [public] school ... who has not obtained a license of qualification for the position as provided for [Ohio law]."

-3-

the CLCP program since 2000. (Shampine Depo. at 26.)  Ms. Corley asserts that staffing levels for the CLCP program is determined by student participation and available funding. (Doc. No. 32, Exh. 3 at ¶8.)  The CLCP program for the summer of 2007 had seven teaching positions that were filled by teachers holding regular teaching licenses  – the lone exception was that one of the two physical education instructors held only a substitute teacher license. *Id*. at ¶10.  The visual arts position, the area in which Plaintiff has a substitute license, was filled by Michelle Mullins, who held a regular teaching license.  (Doc. No. 32, Exh. 3-2.) Plaintiff applied to teach during the 2007 CLCP program but was not hired.  (Shampine Depo. at 23l Doc. No. 32, Exh. 3 at ¶14.)  Ms. Corley states that of twenty-three applicants for the seven available positions, five were minorities and three were over the age of forty.  (Doc. No. 32, Exh. 3 at ¶13.)  According to Defendant, the decisive factor in hiring was experience and credentials – primarily possession of a regular teaching certificate.  *Id*. at ¶¶9, 14-15. Defendant further asserts that the 2007 CLCP program utilized fewer staff than in 2006 due to reduced funding; and, that the ballet program taught by Plaintiff in the summer of 2006 was not offered in 2007.  *Id*. at ¶¶16-18.

### III.  Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and, in pertinent part, states:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.

The moving party can meet this burden by presenting sufficient evidence to indicate there is no genuine issue of material fact *or* by arguing the non-moving party, after adequate

time for discovery, has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may rely on depositions, answers to interrogatories, and the like, to demonstrate that the non-moving party has no evidence to prove his case and hence that there can be no factual dispute. *Id.* at 328; FED. R. CIV. P. 56(e). Once the moving party has met its burden, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *See Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). In other words, the non-moving party has an affirmative duty to direct the court's attention to specific evidence upon which it seeks to rely. *See, e.g., Al-Qudhai'een v. America West Airlines, Inc.*, 267 F. Supp.2d 841, 845 (S.D. Ohio 2003) (*citing In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001)). All reasonable inferences should be drawn in favor of the non-moving party. *See Joostberns v. United Parcel Servs., Inc.*, 2006 U.S. App. LEXIS 533 at *8 (6th Cir. 2006).

### IV. Analysis

**A.    Counts One and Two**

In Counts One and Two of the Complaint, Plaintiff alleges that she was not hired as a substitute teacher or summer instructor because of her age and "culture." (Doc. No. 1.) The Court construes Count Two of the Complaint as alleging discrimination based on religion.[4]

---

[4] It is well settled "inartfully pleaded allegations in a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers." *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (internal quotation marks omitted) (*citing Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Further, allegations in *pro se* pleadings are entitled to "liberal construction" which sometimes requires "active interpretation ... to encompass any

Though Count Two of the Complaint expressly states that she was discriminated against due to her "culture," earlier in the Complaint, Plaintiff states that she practiced "the Moslem culture (religion) as a way of life." (Doc. No. 1 at ¶3.)

A plaintiff can establish an age discrimination case in two different ways: (1) establishing a *prima facie* case of discrimination; or (2) establishing direct evidence of discrimination. *See Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547-548 (6th Cir. 2004) (*citing Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1248-49 (6th Cir. 1995)). Since Plaintiff has offered no direct evidence of age discrimination, she must establish a *prima facie* case. "In order to establish a *prima facie* case of age discrimination, plaintiffs must show (1) that they were a member of a protected age class; (2) that they were discharged [or suffered an adverse employment action]; (3) that they were qualified for the positions held; and (4) that they were replaced by a younger worker."[5] *See Rowan*, 360 F.3d at 548 (*citing Cox v. DOT*, 53 F.3d 146, 150 (6th Cir. 1995)); *accord Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307 (6th Cir. 2007). Once a plaintiff has established a *prima facie* case of age discrimination, the burden shifts to the defendant, who must give legitimate, non-discriminatory reasons for the adverse employment decision. *Rowan*, 360 F.3d at 547 (*citing LaPointe v. United Auto Workers Local 600*, 8 F.3d 376, 379 (6th Cir. 1993)). If

---

allegation stating federal relief." *Id.*

[5] Also, in "reduction in force" cases, the fourth prong is modified so that a plaintiff must provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Rowan*, 360 F.3d at 547 -48 (*quoting Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *see also Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365 (6th Cir. 1999).

defendant is able to do so, the burden shifts back to the plaintiff, who must then establish that the reasons offered by the defendant were merely pretextual. *Id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

The legal requirements for religious discrimination mirror the requirements listed above. "To assert a successful claim of religious discrimination under Title VII, a plaintiff must either present direct evidence of discrimination or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he experienced an adverse employment action, (3) that he was qualified for the position, and (4) that he was replaced by a person outside of the protected class or that he was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007) (*citing Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000); *McDonnell Douglas Corp.*, 411 U.S. 792 at 802.) Further, the same burden shifting applies in religious discrimination actions. *Id*. at 515-16.

Plaintiff has not offered any direct evidence of either age or religious discrimination. With respect to the age discrimination claim, Plaintiff can show that she was a member of a protected age class and that she was discharged (or not re-hired). However, Plaintiff cannot show that she was qualified for the substitute teaching position because she did not possess the requisite substitute teachers' license at the time of the hiring decision. Further, there is no evidence in the record suggesting that the substitute teachers ultimately hired for the 2006-2007 school-year were younger than Plaintiff. As for the summer CLCP position, Defendant has presented evidence that it was hiring fewer staff and requiring regular teaching licenses due to reduced funding. Thus, Plaintiff, possessing only a substitute license, was not

qualified for the filled positions.  Even if Plaintiff could overcome the qualifications hurdle, she cannot show that she was replaced by a younger person.  There is evidence that three of the seven staff members hired for the CLCP positions were also over forty years of age.[6] Moreover, assuming *arguendo* that Plaintiff could make out a *prima facie* case of age discrimination, Defendant has offered legitimate, non-discriminatory reasons for not re-hiring her – namely that (1) she was not qualified because she did not possess a regular teaching license and, (2) the ballet position she previously held was eliminated due to decreased funding.  Plaintiff has made no attempt to establish that the reasons offered by Defendant were merely pretextual.  As such, her age discrimination claim cannot survive summary judgment.

Turning to her religious discrimination claim, it is reasonable to infer that Plaintiff could show that she is a Muslim as she averred in the Complaint and that she suffered an adverse employment action – not being re-hired.  Just as in the age discrimination claim, however, Plaintiff cannot show that she was qualified for either the substitute teaching position, due to the expiration of her substitute teachers' license, or the summer CLCP position.  Furthermore, Plaintiff has not shown that persons hired for the CLCP program were of a different religious persuasion or that she was treated differently than similarly situated employees.  There is no evidence to suggest that non-Muslims without a regular teaching license were treated differently than Plaintiff.  Even if she could establish a *prima facie* case, Plaintiff has made no attempt to establish that the non-discriminatory reasons given by

---

[6] It is unclear from the record whether Michelle Mullins, the visual arts teacher, was younger than Plaintiff.

Defendant for not hiring her were pretextual.

Therefore, it is recommended that both Counts One and Two of the Complaint be dismissed as no genuine issue of material fact remains.

**B.      Count Three**

In Count Three of the Complaint, Plaintiff appears to allege a due process violation pursuant to the Fourteenth Amendment and the Ohio Constitution. (Doc. No. 1.) To be entitled to the procedural protections of the Fourteenth Amendment, Plaintiff must demonstrate that her failure to be re-hired deprived her of either a "liberty" or a "property" interest. *See Board of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 82 (1978). Plaintiff, however, has not alleged a deprivation of either. She has not identified any facts that establish a potential property or liberty interest. Although *pro se* pleadings are entitled to liberal construction, it is not this Court's function to search the record for evidence capable of supporting Plaintiff's bare allegation. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). Defendant has met its burden of showing that there is no genuine issue of material fact. As Plaintiff has made no attempt to direct the Court's attention to specific evidence in support of her allegations, Count Three should be dismissed.

## V. Conclusion

For the foregoing reasons, it is recommended that Defendant's Motion For Summary Judgment be GRANTED.

                                             *s/ Greg White*
                                             U.S. Magistrate Judge

DATED: April 2, 2009

### **OBJECTIONS**

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**